UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

GRACE O. DOUGLASS,

                                    Plaintiff,

                                                                DECISION AND ORDER

                                                                10-CV-6031L

                v.

ROCHESTER CITY SCHOOL DISTRICT,
SAMUEL RODRIGUEZ,
CORNELIUS ZWIERLEIN,
CONNIE LEECH, individually

                                    Defendants.

_____

        Plaintiff Grace O. Douglass ("plaintiff") commenced this action against her former employer,

defendant the Rochester City School District (the "District"), its Chief of Secondary Schools, Connie

Leech, Global Media Arts high School at Franklin principal Dr. Samuel Rodriguez ("Rodriguez"),

and District Director for Health, Physical Education and Athletics Cornelius Zwierlein ("Zwierlein")

(collectively "defendants").  Plaintiff claims that during her employment, the defendants separately

and together violated her rights pursuant to 42 U.S.C. §1981, Title VII of the Civil Rights Act of

1964, 42 U.S.C. § 2000e et seq., and the New York Human Rights Law, N.Y. Exec. Law §§290 et

seq. ("NYHRL").  Plaintiff, who was employed by the District as an Athletic Director, alleges claims

of workplace discrimination, harassment, and retaliation based on race and gender.

        The defendants now move for summary judgment dismissing the amended complaint in its

entirety (Dkt. #12).  Familiarity with the underlying facts and evidence submitted in support of, and

in opposition to, that motion, is presumed.

**DISCUSSION**

I.      **Summary Judgment Standard**

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there is a genuine issue of material fact to be tried. *See Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). Although all inferences are to be construed in favor of the non-movant, she must present more than a "scintilla of evidence," *Belpasso v. Port Auth. of N.Y. & N.J.,* 2010 U.S. App. LEXIS 23662 at *2 (2d Cir. 2010), or "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and cannot rely solely on the allegations in her pleadings, "conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001).

II.     **Plaintiff's Title VII Discrimination and Retaliation Claims**

A.      **Harassment and/or Hostile Work Environment**

It is well settled that in order to prevail on hostile work environment claim under Title VII, a plaintiff must make a *prima facie* showing that her workplace was permeated with "discriminatory intimidation, ridicule, and insult ... sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," and show a specific basis for imputing the conduct that created the hostile work environment to his employer. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). Nonetheless, "Title VII is not a general civility code," *Bickerstaff v. Vassar College*, 196 F.3d 435, 452 (2d Cir. 1999) (internal quotations omitted), and sporadic, isolated incidents of "boorish or offensive use of language" are not sufficiently egregious to establish a hostile work environment. *Benette v. Cinemark U.S.A., Inc.*, 2003 U.S. Dist. LEXIS 22636 at *18 (W.D.N.Y. 2003). *See also Clark County School District v. Breeden*, 532 U.S. 268, 270 (2001) (conduct must be severely threatening or humiliating to rise to the level of a hostile work environment); *Kotcher v. Rosa & Sullivan*

- 2 -

*Appliance Ctr.*, 957 F.2d 59, 62 (2d Cir. 1992) ("incidents must be repeated and continuous; isolated acts or occasional episodes will not merit relief").

Here, plaintiff does not allege a series of repeated, continuous, threatening or humiliating incidents sufficient to approach a hostile work environment.

Plaintiff's allegations primarily concern her principal, Rodriguez.  Plaintiff claims that Rodriguez communicated with her in a disrespectful tone, reacted with short-tempered anger toward plaintiff and told her it was a "strike against" her when a soccer game had to be rescheduled because the field had not been lined, angrily admonished plaintiff in front of others after student managers failed to provide water for a basketball game, instructed her to "get [your] butt out there and fill up the water buckets" during a game, slammed his hand on a table, referred to plaintiff on one occasion during a meeting as "that lady," failed to provide plaintiff with a District-issued cell phone, and insisted that plaintiff address him as "Dr. Rodriguez" rather than "Dr. Sam."   She also claims that Zwierlein left her out of some lunch meetings, denied a request for certain athletic equipment, incorrectly accused plaintiff of failing to give equipment to a coach she supervised, denied plaintiff's request to work with an athletic administration intern, permitted other athletic directors to mock the competency of another athletic director who had been denied tenure, and required plaintiff to travel two hours for a meeting.

Taken as a whole and granting all favorable inferences to plaintiff, these allegations, which do not include any "facts to support her claim that the conduct occurred *because of her race* [or gender]," do not describe a hostile work environment. *Turner v. Nazareth College*, 2011 U.S. Dist. LEXIS 8324 at *15 (W.D.N.Y. 2011) (emphasis added).  *See also Mattison v. Potter*, 414 F. Supp. 2d 356, 373 (W.D.N.Y. 2007).  Initially, plaintiff, who is African-American, makes no allegation concerning any racially charged or gender-specific language or conduct of any kind, nor does the evidence, construed in plaintiff's favor, suggest a discriminatory motive for the alleged conduct by Rodriguez and Zwierlein.  *See Davis-Bell v. Columbia Univ.*, 2012 U.S. Dist.

LEXIS 38490 at *59-*60 (S.D.N.Y. 2012) (granting summary judgment dismissing hostile work environment claims where plaintiff alleges only that her supervisor treated her harshly, and was nasty, mean and impolite, but never made any racially derogatory comments). *Accord Turner*, 2011 U.S. Dist. LEXIS 8324 at *15 (dismissing race-based hostile work environment claim as insufficiently stated, where plaintiff alleges that her supervising teacher mocked and yelled at her, but does not claim that the mockery or yelling was racially derogatory, that racial epithets were used, or that the conduct was otherwise propelled by a discriminatory motive).   In any event, the sporadic verbal altercations and social snubs plaintiff describes do not indicate conduct so continuous, threatening, or offensive as to comprise a hostile work environment.   Plaintiff's claim of discrimination and harassment in the form of a hostile work environment is thus dismissed.

### B.     Retaliation

The plaintiff's retaliation claims are equally unconvincing.   Claims of retaliation pursuant to Title VII are subject to the burden-shifting analysis articulated in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973).   On a motion for summary judgment, a plaintiff must first establish a *prima facie* case of retaliation by showing: (1) her participation in a protected activity known to the defendants; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action.   Once she has done so, the burden shifts to the defendants to establish a legitimate, non-retaliatory basis for the complained-of action. If the defendants do so, the burden returns to plaintiff, who must show that the legitimate, non-retaliatory reason articulated by the defendant is a mere "pretext," and that retaliation was more likely than not the reason for the complained-of action.   *See Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000); *Gallagher v. Delaney*, 139 F.3d 338, 349 (2d Cir. 1998).

Plaintiff claims that after a four-year extended probationary period which concluded at the end of the 2007-2008 school her, Rodriguez gave her negative mid-year and end-of-the-year performance evaluations, and recommended that she be denied tenure and that her employment be terminated accordingly.   Initially, I note that both of the performance evaluations described by

plaintiff were completed and provided to plaintiff *prior* to her engagement in protected activity by filing a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").[1]

Accordingly, the sole question before the Court is whether a reasonable jury could find that the Board's decision to offer plaintiff a transfer to a teaching position, and/or its offer of an additional probationary year in exchange for a release of claims and discontinuance of her administrative action, comprise an adverse employment action with a causal connection to her protected activity.

Pursuant to state law, teachers and administrators serve a three-year probationary period prior to becoming eligible for tenured status. *See* N.Y. Educ. Law §§ 2509, 2573, 3012, 3014.  If the superintendent does not recommend tenure after that time, the employee may be terminated, or if it is determined prior to the expiration of the probationary period that tenure will not be recommended, may be offered the opportunity to enter into an agreement extending the probationary period for an additional year for additional performance review and tenure consideration. *See e.g., Juul v. Bd. of Educ. Of Hempstead*, 76 A.D.2d 837 (2d Dept. 1980), *aff'd*, 55 N.Y.2d 648 (1981).

Here, plaintiff claims that after Rodriguez gave her a negative end-of-the-year evaluation for the 2007-2008 school year and decided not to recommend her for tenure – a recommendation adopted by the superintendent and ultimately the School Board – she engaged in protected activity by filing an initial EEOC discrimination complaint on July 14, 2008. (Dkt. #1 at ¶¶52-55). Plaintiff avers that she was thereafter subjected to retaliatory harassment in that the Board of Education

---

[1]  Although plaintiff generally alleges that she made complaints of race and/or gender-based discrimination prior to the negative evaluation, she has not produced any evidence of such complaints, and a December 10, 2007 letter to Human Resources upon which she purports to rely makes no mention of gender or race-based discrimination. (Dkt. #17-7 at Exh. E)).  *See e.g., Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 521-22 (S.D.N.Y. 2010) (while a plaintiff alleging gender-based discrimination "need not have explicitly used the words 'discrimination' or 'gender' to afford [her] complaints protected activity status," if the protected activity "does not lend itself to a reasonable inference of unlawful discrimination, such 'magic words' may be the only way to put the employer on notice that the employee believes [her]self to be complaining of discriminatory conduct") (citation omitted).  *See also Gaidasz v. Genesee Valley Bd. of Coop. Educ. Svcs.*, 791 F. Supp. 2d 332, 340 (W.D.N.Y. 2011); *Sharpe v. MCI Communications Servs., Inc.*, 684 F. Supp. 2d 394, 406 (S.D.N.Y. 2010).

offered to transfer her a teaching position at the Children's School of Rochester, a job which would have been a demotion from the athletic director position from which plaintiff was being terminated. Plaintiff declined or did not respond to that offer, and sometime thereafter the District allegedly offered to extend her probationary period once more, in exchange for a general release of claims against the District.  After she refused or failed to respond to that offer, plaintiff's employment was formally terminated on or about December 19, 2008.  (Dkt. #12-5 at Exh. L).

I find that no reasonable jury could conclude that plaintiff suffered an adverse employment action in retaliation for filing an EEOC charge, and/or that her ultimate termination was causally connected to the charge.  First, plaintiff cites no law, nor does research reveal any, holding that a District's offer of transfers and/or additional probationary years to an employee otherwise facing termination could be construed as an adverse employment action.  To the contrary, the District had no obligation to continue plaintiff's employment.  It is undisputed that in the absence of plaintiff's assent to an extension of probation or a grant of tenure, plaintiff's non-tenured employment as an athletic director could not have otherwise been extended by the Board.  *See Gould v. Bd. of Educ.*, 81 N.Y.2d 446 (1993) (denial of tenure is, of necessity, accompanied by termination: otherwise, a teacher employed after the probationary period could acquire tenure by estoppel).

Moreover, plaintiff offers no evidence suggesting that there was any causal connection between her July 14, 2008 EEOC charge and her termination.  To the contrary, the initial non-tenure decision and termination recommendation by Rodriguez – which directly and ultimately led to the termination of plaintiff's employment in December 2008 – was made on June 20, 2008 (Dkt. #12-5 at Exh. H), and she was notified that the Superintendent intended to recommend her termination to the Board on July 7, 2008 (Dkt. #12-5 at Exh. I).  Plaintiff's EEOC charge was not filed until later, on July 14, 2008.  (Dkt. #12-5 at Exh. J).  The plaintiff's termination was, in the absence of the Board's extension of her probation, a *fait accompli* prior to her EEOC charge.  As such, the adverse employment action against her cannot be reasonably deemed to have been caused by her protected activity.  Plaintiff's retaliation claim is therefore dismissed.

**III.      Plaintiff's Equal Protection Claim**

Finally, plaintiff has failed to put forth any evidence in support of her equal protection claim. In order to establish a *prima facie* equal protection claim, plaintiff must show that: (1) she was treated differently from others similarly situated; and (2) that the differential treatment was motivated by an intent to discriminate on the basis of impermissible considerations, or by a malicious or bad faith intent to injure her.  *See Cobb v. Pozzi*, 363 F.3d 89, 110 (2d Cir. 2004); *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000).  Analysis of equal protection claims follows the same burden-shifting framework prescribed for claims under Title VII, and generally "the two must stand or fall together."  *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004).

Initially, plaintiff presents no proof that she was treated differently from other similarly-situated employees, let alone that plaintiff's treatment was motivated by an intent to discriminate based on her race or gender.  In any event, as the Court has already concluded, plaintiff has failed to set forth a *prima facie* case of race or gender-based discrimination under Title VII.  Her equal protection claim is therefore dismissed.

I have considered the remainder of plaintiff's arguments, and find them to be without merit.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (Dkt. #12) is granted in its entirety, and the complaint is hereby dismissed, with prejudice.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        July 5, 2012.